## UNITED STATES *v.* SANGES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 1454. Argued January 12, 13, 1892. — Decided April 4, 1892.

A writ of error does not lie in behalf of the United States in a criminal case.

THIS was an indictment on sections 5508 and 5509 of the Revised Statutes, (copied *ante*, 264, note,) averring that while one Joseph Wright, a citizen of the United States, was returning to his home, after having appeared and testified before the grand jury of the United States, in obedience to subpœnas from the Circuit Court of the United States, against persons charged with violations of the internal revenue laws, and while he was still a witness under such subpœnas, the defendants conspired to injure and oppress him in the free exercise and enjoyment of the right and privilege, secured to him by the Constitution and laws of the United States, to inform the proper officers of the United States of violations of the internal revenue laws, and to testify under and in obedience to such subpœnas, and to return to his home in peace and safety after so testifying, and to be secure, safe and unmolested in his person and exempt from violence for having exercised and enjoyed those rights and privileges; and further averring that the defendants, in pursuance and prosecution of such conspiracy, assaulted and murdered him.

The defendants demurred to the indictment, " because there

are no such rights or privileges secured to the party conspired against, by the Constitution and laws of the United States, as those set out in the indictment;" and "because on the facts alleged in said indictment there is no crime or offence set out of which the courts of the United States can take cognizance."

On October 5, 1891, the Circuit Court, held by Mr. Justice Lamar and Judge Newman, adjudged that the demurrer was well founded in law, and that it be sustained and the indictment quashed. 48 Fed. Rep. 78.

This writ of error was thereupon sued out by the United States, and was allowed by the presiding justice. The defendants in error moved to dismiss the writ of error for want of jurisdiction.

*Mr. Attorney General* and *Mr. Solicitor General* for plaintiff in error.

*Mr. W. C. Glenn* for defendants in error. *Mr. A. H. Garland* filed a brief in support of the motion to dismiss.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The jurisdiction of this court is invoked by the United States under that provision of the Judiciary Act of 1891, by which "appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court" "in any case that involves the construction or application of the Constitution of the United States." Act of March 3, 1891, c. 517, § 5; 26 Stat. 827, 828.

But the question which lies at the very threshold is whether this provision has conferred upon the United States the right to sue out a writ of error in any criminal case.

This statute, like all acts of Congress, and even the Constitution itself, is to be read in the light of the common law, from which our system of jurisprudence is derived. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 545; *Rice* v. *Railroad Co.,* 1 Black, 358, 374, 375; *United States* v. *Carll,* 105 U. S.

611; *Ex parte Wilson*, 114 U. S. 417, 422; 1 Kent Com. 336. As aids, therefore, in its interpretation, we naturally turn to the decisions in England and in the several States of the Union, whose laws have the same source.

The law of England on this matter is not wholly free from doubt. But the theory that at common law the King could have a writ of error in a criminal case after judgment for the defendant has little support beyond sayings of Lord Coke and Lord Hale, seeming to imply, but by no means affirming it; two attempts in the House of Lords, near the end of the seventeenth century, to reverse a reversal of an attainder; and an Irish case and two or three English cases, decided more than sixty years after the Declaration of Independence; in none of which does the question of the right of the Crown in this respect appear to have been suggested by counsel or considered by the court. 3 Inst. 214; 2 Hale P. C. 247, 248, 394, 395; *Rex* v. *Walcott*, Show. P. C. 127; *Rex* v. *Tucker*, Show. P. C. 186; *S. C.* 1 Ld. Raym. 1; *Regina* v. *Houston* (1841) 2 Crawford & Dix, 191; *The Queen* v. *Millis* (1844) 10 Cl. & Fin. 534; *The Queen* v. *Wilson* (1844) 6 Q. B. 620; *The Queen* v. *Chadwick* (1847) 11 Q. B. 173, 205. And from the time of Lord Hale to that of *Chadwick's Case*, just cited, the textbooks, with hardly an exception, either assume or assert that the defendant (or his representative) is the only party who can have either a new trial or a writ of error in a criminal case; and that a judgment in his favor is final and conclusive. See 2 Hawk. c. 47, § 12; c. 50, §§ 10 *et seq.;* Bac. Ab. Trial, L. 9; Error, B; 1 Chit. Crim. Law, 657, 747; Stark. Crim. Pl. (2d ed.) 357, 367, 371; Archb. Crim. Pl. (12th Eng. and 6th Am. ed.) 177, 199.

But whatever may have been, or may be, the law of England upon that question, it is settled by an overwhelming weight of American authority, that the State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law.

In a few States, decisions denying a writ of error to the State after judgment for the defendant on a verdict of acquittal have proceeded upon the ground that to grant it would be to put him twice in jeopardy, in violation of a constitutional provision. See *State* v. *Anderson* (1844) 3 Sm. & Marsh. 751; *State* v. *Hand* (1845) 6 Arkansas, 169; *State* v. *Burris* (1848) 3 Texas, 118; *People* v. *Webb* (1869) 38 California, 467; *People* v. *Swift* (1886) 59 Michigan, 529, 541.

But the courts of many States, including some of great authority, have denied, upon broader grounds, the right of the State to bring a writ of error in any criminal case whatever, even when the discharge of the defendant was upon the decision of an issue of law by the court, as on demurrer to the indictment, motion to quash, special verdict, or motion in arrest of judgment.

The Supreme Court of Tennessee, in 1817, in dismissing an appeal by the State after an acquittal of perjury, said: "A writ of error, or appeal in the nature of a writ of error, will not lie for the State in such a case. It is a rule of the common law that no one shall be brought twice into jeopardy for one and the same offence. Were it not for this salutary rule, one obnoxious to the government might be harassed and run down, by repeated attempts to carry on a prosecution against him. Because of this rule it is that a new trial cannot be granted in a criminal case, where the defendant is acquitted. A writ of error will lie for the defendant, but not against him. This is a rule of such vital importance to the security of the citizen, that it cannot be impaired but by express words, and none such are used in" the statutes of the State. "Neither does the constitution, art. 11, sec. 10, apply, for here the punishment does not extend to life or limb. The whole of this case rests upon the common law rule." *State* v. *Reynolds*, 4 Haywood, 110. In a similar case in 1829, the same court said: "The court are unanimously of opinion that no appeal lies for the State from a verdict and judgment of acquittal on a State prosecution. The State, having established her jurisdiction and tried her experiment, should be content. To permit appeals might be the means of unnecessary vexation." *State* v.

*Hitchcock,* cited in 6 Yerger, 360. In 1834, the same rule was applied, where, after a verdict of guilty, a motion in arrest of judgment had been made by the defendant and sustained by the court. *State* v. *Solomons,* 6 Yerger, 360.

In 1820, a writ of error obtained by the attorney for the Commonwealth to reverse a judgment for the defendant on demurrer to an information for unlawful gaming was dismissed by the General Court of Virginia, saying only: "The court is unanimously of opinion, that the writ of error improvidently issued on the part of the Commonwealth, because no writ of error lies in a criminal case *for* the Commonwealth." *Commonwealth* v. *Harrison,* 2 Virg. Cas. 202.

The Supreme Court of Illinois, in two early cases, as summarily dismissed writs of error sued out by the State, in the one case to reverse a judgment of acquittal upon exceptions taken at a trial by jury, and in the other to reverse a judgment reversing for want of jurisdiction a conviction before a justice of the peace. *People* v. *Dill* (1836) 1 Scammon, 257; *People* v. *Royal* (1839) 1 Scammon, 557.

In 1848, a writ of error by the State to reverse a judgment for the defendant on a demurrer to the indictment was dismissed by the Court of Appeals of New York, upon a careful review by Judge Bronson of the English and American authorities, including several earlier cases in New York in which such writs of error had been brought, of which the court said: "But in none of the cases was the question either made by counsel, or considered by the court, whether the people could properly bring error. Such precedents are not of much importance." *People* v. *Corning,* 2 N. Y. 9, 15. That decision has been since recognized and acted on by that court, except so far as affected by express statutes. *People* v. *Carnal,* 6 N. Y. 463; *People* v. *Clark,* 7 N. Y. 385; *People* v. *Merrill,* 14 N. Y. 74, 76, 78; *People* v. *Bork,* 78 N. Y. 346.

In 1849, the Supreme Judicial Court of Massachusetts, speaking by Chief Justice Shaw, held that a writ of error did not lie in a criminal case in behalf of the Commonwealth; and therefore dismissed writs of error sued out to reverse judgments upon indictments in two cases, in one of which the defend-

ant, after pleading *nolo contendere,* had moved in arrest of judgment for formal defects in the indictment, and thereupon judgment had been arrested and the defendant discharged, and in the other the indictment had been quashed on the defendant's motion. *Commonwealth* v. *Cummings,* and *Same* v. *McGinnis,* 3 Cush. 212.

In the same year, the Supreme Court of Georgia made a similar decision, dismissing a writ of error sued out by the State upon a judgment quashing an indictment against the defendant; and, in an able and well considered opinion delivered by Judge Nisbet, said: "The rule seems to be well settled in England, that in criminal cases a new trial is not grantable to the Crown after verdict of acquittal, even though the acquittal be founded on the misdirection of the judge. This is the general rule, and obtains in the States of our Union. It excludes a rehearing after acquittal upon errors of law, and therefore, it would seem, denies also a rehearing upon judgments of the court upon questions of law, even when the jury have not passed upon the guilt or innocence of the prisoner. If the effect of the judgment is a discharge, there can be no rehearing, either by new trial or writ of error. Indeed it may be stated, as a general rule, that in criminal cases, upon general principles, errors are not subject to revision at the instance of the State." "These principles are founded upon that great fundamental rule of the common law, *Nemo debet bis vexari pro una et eadem causa;* which rule, for greater caution and in stricter vigilance over the rights of the citizen against the State, has been in substance embodied in the Constitution of the United States, thus: 'Nor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb.'" After observing that this provision of the Constitution could have no direct bearing upon that case, which was of a misdemeanor only, and in which there had been no trial by jury, the court added: "The common law maxim, and the Constitution are founded in the *humanity* of the law, and in a jealous watchfulness over the rights of the citizen, when brought in unequal contest with the State. It is, doubtless, *in the spirit* of this benign rule of the com-

mon law, embodied in the Federal Constitution — a spirit of liberty and justice, tempered with mercy — that, in several of the States of this Union, in criminal causes a writ of error has been denied to the State." *State* v. *Jones*, 7 Georgia, 422, 424, 425.

The Supreme Court of Iowa, in 1856, ordered a writ of error sued out by the State, after the defendant had been acquitted by a jury, to be dismissed, not because to order a new trial would be against art. 1, sec. 12, of the constitution of the State, declaring that "no person shall after acquittal be tried for the same offence," (for the court expressly waived a decision of that question,) but only because of "there being no law to authorize a writ of error on the part of the State in a criminal case." *State* v. *Johnson*, 2 Iowa, 549.

The Supreme Court of Wisconsin, in 1864, held that a writ of error did not lie in behalf of the State to reverse a judgment in favor of the defendant upon a demurrer to his plea to an indictment. *State* v. *Kemp*, 17 Wisconsin, 669. The Supreme Court of Missouri, in 1877, made a similar decision, overruling earlier cases in the same court. *State* v. *Copeland*, 65 Missouri, 497. And the Supreme Court of Florida, in 1881, held that the State was not entitled to a writ of error to reverse a judgment quashing an indictment, and discharging the accused. *State* v. *Burns*, 18 Florida, 185.

In those States in which the government, in the absence of any statute expressly giving it the right, has been allowed to bring error, or appeal in the nature of error, after judgment for the defendant on demurrer to the indictment, motion to quash, special verdict, or motion in arrest of judgment, the question appears to have become settled by early practice before it was contested.

In North Carolina, the right of the State has been strictly limited to the cases just enumerated, and has been denied even when the defendant was discharged upon a judgment sustaining a plea of former acquittal as sufficient in law, or upon a ruling that there was no legal prosecutor; and the Supreme Court has repeatedly declared that the State's right of appeal in a criminal case was not derived from the common law, or

-from any statute, but had obtained under judicial sanction by a long practice; and has held that neither art. 4, sec. 8, of the State constitution of 1876, giving that court "jurisdiction to review upon appeal any decision of the courts below upon any matter of law or legal inference," nor art. 4, sec. 27, of the same constitution, providing that in all criminal cases before a justice of the peace "the party against whom judgment is given may appeal to the superior court, where the matter shall be heard anew," gave any right of appeal to the State, but only to the defendant. *State* v. *Hadcock* (1802) 2 Haywood, 162; *State* v. *Lane* (1878) 78 No. Car. 547; *State* v. *Swepson* (1880) 82 No. Car. 541; *State* v. *Moore* (1881) 84 No. Car. 724; *State* v. *Powell* (1882) 86 No. Car. 640.

The Court of Appeals of Maryland, in 1821, sustained a writ of error by the State to reverse a judgment in favor of the defendants on demurrer to the indictment, citing a number of unreported cases decided in that State in 1793 and 1817. *State* v. *Buchanan,* 5 Har. & Johns. 317, 324, 330. But the same court, in 1878, refused to construe a statute of 1872, providing that in all criminal trials it should be lawful for the attorney for the State to tender a bill of exceptions and to appeal, as authorizing the court, on such exceptions and appeal, to order a new trial after a verdict of acquittal. *State* v. *Shields*, 49 Maryland, 301.

In Louisiana, in the leading case, the court admitted that to allow the State to bring a writ of error in a criminal case was contrary to the common law of England, to the law of most of the States, and to the general opinion of the bar; and the later cases appear to be put largely upon the ground that the practice had become settled by a course of decision. *State* v. *Jones* (1845) 8 Rob. (La.) 573, 574; *State* v. *Ellis* (1857) 12 La. Ann. 390; *State* v. *Ross* (1859) 14 La. Ann. 364; *State* v. *Taylor* (1882) 34 La. Ann. 978; *State* v. *Robinson* (1885) 37 La. Ann. 673.

The Supreme Court of Pennsylvania, from an early period, occasionally entertained, without question, writs of error sued out by the State in criminal cases. *Commonwealth* v. *Taylor* (1812) 5 Binney, 277; *Commonwealth* v. *McKisson* (1822) 8 S.

& R. 420; *Commonwealth* v. *Church* (1845) 1 Penn. St. 105. The first mention of the question appears to have been in a case in which the only objection taken to the right of the Commonwealth to sue out a writ of error was that the writ had not been specially allowed; of which the court said: "There is nothing in the disabling provisos of the statutes to limit the right of the Commonwealth; and the powers of this court, whether deduced from the common law, from the old provincial act of 1722, or from legislation under our state constitutions, are quite competent to the review of any judicial record, when no statutory restraints have been imposed. It would be very strange if the Commonwealth might not appeal to her own tribunals for justice without the special consent of certain of her own officers." This theory that the State may sue out a writ of error, unless expressly denied it by statute, is opposed to the view maintained by a host of decisions above cited; and it is observable that such judges as Judge Thompson and Judge Sharswood were in favor of quashing writs so sued out. *Commonwealth* v. *Capp* (1864) 48 Penn. St. 53, 56; *Commonwealth* v. *Moore* (1882) 99 Penn. St. 570, 576.

In many of the States, indeed, including some of those above mentioned, the right to sue out a writ of error, or to take an appeal in the nature of a writ of error, in criminal cases, has been given to the State by positive statute. But the decisions above cited conclusively show that under the common law, as generally understood and administered in the United States, and in the absence of any statute expressly giving the right to the State, a writ of error cannot be sued out in a criminal case after a final judgment in favor of the defendant, whether that judgment has been rendered upon a verdict of acquittal, or upon a determination by the court of an issue of law. In either case, the defendant, having been once put upon his trial and discharged by the court, is not to be again vexed for the same cause, unless the legislature, acting within its constitutional authority, has made express provision for a review of the judgment at the instance of the government.

In the light of these decisions, we come to the consideration

of the acts of Congress on the subject of writs of error in criminal cases.

The appellate jurisdiction of this court rests wholly on the acts of Congress. For a long time after the adoption of the Constitution, Congress made no provision for bringing any criminal case from a Circuit Court of the United States to this court by writ of error. At February term, 1803, indeed, this court, no objection being made, took jurisdiction of a writ of error sued out by the United States to the Circuit Court for the District of Columbia in a criminal case. *United States* v. *Simms*, 1 Cranch, 252. But at February term, 1805, in a like case, this court, upon full argument and consideration, held that it had no jurisdiction of a writ of error in a criminal case, and overruled *United States* v. *Simms*, Chief Justice Marshall saying: "No question was made in that case as to the jurisdiction. It passed *sub silentio*, and the court does not consider itself as bound by that case." *United States* v. *More*, 3 Cranch, 159, 172. And it was thenceforth held to be settled that criminal cases could not be brought from a Circuit Court of the United States to this court by writ of error, but only by certificate of division of opinion upon specific questions of law. *Ex parte Kearney*, 7 Wheat. 38, 42; *Ex parte Gordon*, 1 Black, 503; *Ex parte Yarbrough*, 110 U. S. 651; *Farnsworth* v. *Montana*, 129 U. S. 104, 113; *United States* v. *Perrin*, 131 U. S. 55.

As to each of the Territories, except Washington, the Revised Statutes provided that final judgments and decrees of its Supreme Court, where the value of the matter in dispute exceeded $1000, might be reviewed by this court, upon writ of error or appeal, in the same manner and under the same regulations as the final judgments and decrees of a Circuit Court of the United States. Rev. Stat. §§ 702, 1909. The act of June 23, 1874, c. 469, § 3, provided that a writ of error should lie from this court to the Supreme Court of the Territory of Utah, "in criminal cases, where the accused shall have been sentenced to capital punishment, or convicted of bigamy or polygamy." 18 Stat. 254. The act of March 3, 1885, c. 355, provided, in § 1, that no appeal or writ of error should

be allowed from the Supreme Court of a Territory unless the matter in dispute exceeded $5000; and in § 2 that the preceding section should not apply to any case "in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute." 23 Stat. 443. At October term, 1885, this court, without objection, decided upon the merits a writ of error to the Supreme Court of the Territory of Utah by one convicted of a crime which was neither bigamy or polygamy, nor punishable with death. But at the same term, after argument upon its jurisdiction of a like writ of error, the court dismissed both writs of error, and, in answering the objection that it had taken jurisdiction of the first writ, said : "The question of jurisdiction was not considered in fact in that case, nor alluded to in the decision, nor presented to the court by the counsel for the United States, nor referred to by either party at the argument or in the briefs. Probably both parties desired a decision on the merits." *Cannon* v. *United States*, 116 U. S. 55, and 118 U. S. 355; *Snow* v. *United States*, 118 U. S. 346, 354. The question whether the provision of the act of March 3, 1885, c. 355, § 2, authorizing a writ of error from this court to the Supreme Court of any Territory in any case "in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States," extended to criminal cases, was then left open, but at October term, 1888, was decided in the negative. *Farnsworth* v. *Montana*, 129 U. S. 104.

The manner of bringing up criminal cases from the Circuit Courts of the United States upon a certificate of division of opinion has undergone some changes by successive acts of Congress. Under the act of April 29, 1802, c. 31, § 6, whenever there was a division of opinion in the Circuit Court upon a question of law, the question was certified to this court for decision; provided that the case might proceed in the Circuit Court if in its opinion further proceedings could be had without prejudice to the merits, and that no imprisonment should be allowed or punishment inflicted, upon which the judges

were divided in opinion.   2 Stat. 159;  *United States* v. *Tyler,* 7 Cranch, 285; *United States* v. *Daniel,* 6 Wheat. 542 ; *United States* v. *Bailey,* 9 Pet. 267.   By the act of June 1, 1872, c. 255, § 1, " whenever, in any suit or proceeding " in a Circuit Court, there occurred any difference of opinion between the judges, the opinion of the presiding judge was to prevail for the time being ; but upon the entry of a final judgment, decree or order, and a certificate of division of opinion as under the act of 1802, " either party " might remove the case to this court " on writ of error or appeal, according to the nature of the case."   17 Stat. 196.   That act continued in force only about two years, when it was repealed by the Revised Statutes.   By sections 650, 652 and 693 of those statutes, its provisions were restricted to civil suits and proceedings ; and by sections 651 and 697 the provisions of section 6 of the act of 1802 were reënacted as to criminal cases.   *Ex parte Tom Tong,* 108 U. S. 556, 559.   In *United States* v. *Reese,* 92 U. S. 214, and in *United States* v. *Cruikshank,* 92 U. S. 542, argued at October term, 1874, and decided at October term, 1875, which were brought to this court by the United States, by writ of error and certificate of division of opinion, after judgment according to the opinion of the presiding judge, sustaining a demurrer to the indictment, or a motion in arrest of judgment, it appears, by the records and briefs on file, that the judgment below was entered and the certificate of division made under the act of 1872, and that no objection was taken to the jurisdiction of this court.   The exercise of jurisdiction over those cases on writ of error is therefore entitled to no more weight by way of precedent than the exercise of appellate jurisdiction *sub silentio* in the cases, above cited, of *United States* v. *Simms,* 1 Cranch, 252, and *Cannon* v. *United States,* 116 U. S. 55.

The first act of Congress which authorized a criminal case to be brought from a Circuit Court of the United States to this court, except upon a certificate of division of opinion, was the act of February 6, 1889, c. 113, § 6, by which it was enacted that " in all cases of conviction " of a capital crime in any court of the United States, the final judgment " against

the respondent" might, on his application, be reëxamined, reversed or affirmed by this court on writ of error. 25 Stat. 656. The writ of error given by that act was thus clearly limited to the defendant; and the terms and effect of the act of June 23, 1874, c. 469, § 3, above cited, concerning writs of error from this court to the Supreme Court of the Territory of Utah, as well as those of the act of March 3, 1879, c. 176, giving a writ of error from the Circuit Court of the United States to a District Court, were equally restricted. 18 Stat. 254; 20 Stat. 354.

The provisions of the Judiciary Act of March 3, 1891, c. 517, material to be considered in this case, are those of § 5, by which appeals or writs of error may be taken from a Circuit Court directly to this court in certain classes of cases, among which are "cases of conviction of a capital or otherwise infamous crime," and "any case that involves the construction or application of the Constitution of the United States;" and those of § 6, by which the Circuit Courts of Appeals established by this act have appellate jurisdiction to review, by appeal or writ of error, final decisions in the District and Circuit Courts "in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law," and the judgments or decrees of the Circuit Courts of Appeals are made final "in all cases arising under the criminal laws" and in certain other classes of cases, unless questions are certified to this court, or the whole case ordered up by writ of *certiorari*, as therein provided. 26 Stat. 827, 828.

The provision of section 5, authorizing writs of error from this court in cases of capital or otherwise infamous crimes, is clearly limited in terms and effect (like the provision of the act of 1889, authorizing a writ of error in cases of capital crimes, and earlier acts, above cited) to convictions only. Whether a writ of error by the defendant in a criminal case of lower grade would be included in the provisions of that section for bringing to this court cases in which th jurisdiction of the court below is in issue, or which involve the construction or application of the Constitution of the United States, or the validity of a law of the United States, or the

validity or construction of a treaty, or in which it is contended that the constitution or a law of a State contravenes the Constitution of the United States, is not now before us for decision.

The provision of section 6, giving the Circuit Courts of Appeals in general terms appellate jurisdiction of criminal cases, says nothing as to the party by whom the writ of error may be brought, and cannot therefore be presumed to have been intended to confer upon the government the right to bring it.

In none of the provisions of this act, defining the appellate jurisdiction, either of this court, or of the Circuit Court of Appeals, is there any indication of an intention to confer upon the United States the right to bring up a criminal case of any grade after judgment below in favor of the defendant. It is impossible to presume an intention on the part of Congress to make so serious and far-reaching an innovation in the criminal jurisprudence of the United States.

*Writ of error dismissed for want of jurisdiction.*