Commonwealth *v.* Kroekel, Appellant.

Argued October 16, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William A. Gray,* for appellant.

*John H. Maurer,* with him *Abraham Berkowitz,* Assistant District Attorneys, with him *Charles F. Kelley,* District Attorney, and *William C. Ferguson, Jr.,* for appellee.

OPINION BY JAMES, J., March 9, 1936:

Appellant was indicted in the Court of Quarter Sessions of the County of Philadelphia upon a charge of fornication and bastardy alleged to have been committed with one Marie Clayton. Defendant pleaded not guilty and was tried before BONNIWELL, J., on May 25, 1933, resulting in his conviction on May 26, 1933, on which date the defendant was ordered by the court to pay $9 per week for the support of the bastard child and to pay the sum of $35 for lying-in expenses. On May 29, 1933, appellant filed his motion and reasons for a new trial, which were argued on June 30, 1933 before the trial judge, who, on July 13, 1933, entered an order granting the motion for a new trial. (The reasons which prompted the granting of the new trial do not appear in the record presented to us.) The case was then listed for trial on October 26, 1933, at which time Abraham Berkowitz, Esq., assistant district attorney, appeared for the Commonwealth; Albert P. Goldberg, Esq., for the private prosecutrix; and Herbert W. Salus, Esq., for the defendant, and from the record the following appears:

---

"Commonwealth's Testimony
Marie Clayton, 2830 North 4th Street, sworn.

By Mr. Berkowitz: Q. You are the prosecutrix in a case of Commonwealth v. Paul Kroekel in which you

claim that Paul Kroekel was the father of your child, is that right? A. Yes, sir. Q. What do you wish to ask the Court now relative to this case, where a new trial has been granted? Do you desire to prosecute this case or desire to have the case withdrawn? A. I decided to have the case withdrawn. Q. You do not desire to prosecute it now or any other time in the future for support of the child? A. No. Q. Upon which he has been previously tried and on which a new trial was granted? A. That's right. Q. Is that correct? A. Yes. Q. Will you sign a nolle prosse? A. Yes. Mr. Salus: We feel we ought to have a submission in this case. Mrs. Huntley: She said he is the father of the child. She wishes to nolle prosse it. Mr. Salus: That would not be satisfactory to the defendant. We are conceding something to the prosecutrix. Mrs. Huntley: I don't see how they are. The Court: It will be submitted or go to trial. By Mr. Berkowitz: Q. Are you willing to drop the charge and ask for a verdict of not guilty as to his being the father of the child? (Not answered). Mr. Berkowitz: Whom do you represent? Mr. Goldberg: I represent Marie Clayton, the prosecutrix. I represent her in another matter and she has asked me to take care of her interests in this case. Mr. Berkowitz: Do you wish to make any statement to this Court with reference to her position here with reference to her desiring to withdraw this charge? Mr. Goldberg: I do. Miss Clayton, for reasons that she does not care to have stated on the record, desires to withdraw the prosecution against the defendant. She is willing to drop any thought of obtaining support from the defendant for the child at this time or any time in the future, and is willing to sign the back of the bill of indictment to that effect. By Mr. Berkowitz: Q. Miss Clayton, you are perfectly satisfied with the statement of counsel in this matter? A. I am. Mr. Berkowitz: I will ask that a verdict of not guilty be en-

tered. By the Court: Q. Is that satisfactory? A. Yes. Q. With a verdict of not guilty or a nolle prosse? A. Not guilty. By Mr. Berkowitz: Q. Are you satisfied? A. Yes.

---

(Bill submitted)

---

(The following appears on the bill of indictment):
10-26-33
P Not Guilty
10-26-33
Verdict Not Guilty
   County Pay Costs
   at request of Prosecutor
      (sgd) Marie Clayton
Witness:
Claire C. Huntley"

On May 13, 1935, before the same judge, appeared John H. Maurer, Esq., and James W. Tracey, Jr., Esq., assistant district attorneys, and Mr. Maurer drew the attention of the court to the above mentioned proceedings and to an investigation which had been held in the matter of the disbarment of Samuel W. Salus, Herbert W. Salus and Albert P. Goldberg before a board of judges sitting for the Courts of Common Pleas of Philadelphia County. He offered certain testimony, taken in the investigation, that established a fraud had been committed upon the court and coercion upon the alleged private prosecutrix by reason of a threat and an actual arrest for some other charge to induce and force her to grant and agree to an abandonment of the case, and suggested that owing to the knowledge acquired from the record, action ought to and should be taken to remedy whatever miscarriage of justice had been rendered in the case, to which the court replied: "Mr. District Attorney, the Court has already reviewed with the utmost care the proceedings had before the

five President Judges of the Courts of Common Pleas of Philadelphia County sitting as a Board of Inquiry, particularly those relating to the cause at bar.

"The consent of the prosecutrix to the withdrawal of the prosecution being had under duress, is a nullity. The acts leading up to the submission of the bill of indictment and the directed verdict thereunder are a fraud upon the Court.

"No real Court can conceivably be so impotent that it cannot purge its docket under such circumstances.

"No precedent is required to direct the action of the Court. The verdict obtained by fraud is void ab initio.

"It is now set aside and stricken from the record. The District Attorney is directed to list for trial and proper determination the case of Commonwealth v. Paul Kroekel at such time when justice may be had by all the parties concerned." From this order, defendant appeals.

It does not appear from the record that at the time this order was made, notice had been given to the defendant or to his counsel nor was the defendant, or any person representing him, present.

For the purpose of this appeal, it is unnecessary to recite in detail the testimony in the record as presented to the court below, as the opinions of the Board of Judges are fully reported in 22 D. & C. 573; 22 D. & C. 582, and appeals from the disbarment orders are now pending in the Supreme Court. We shall assume, for the purpose of this appeal, that fraud was committed upon the court and coercion upon the prosecutrix.

Appellant presents three grounds upon which the action of the court below should be reversed: (1) that after a verdict of not guilty has actually been rendered and recorded in a criminal case, the court has no power to vacate the verdict and grant a new trial; (2) that the court has no power to make such order even though obtained by fraud without notice to the defendant, and

(3) that the fraud shown must have been perpetrated by the defendant or with his knowledge and consent. As suggested by counsel for the Commonwealth, this case should be disposed of on the main issue of, whether the defendant may be ordered for re-trial in the face of this record of acquittal. Keen as should be the desire and duty of our courts to strike down fraud and dishonest practices when and wherever they arise, yet in our efforts to eradicate such evils, we must not destroy fundamental practices and principles that have been long recognized in the preservation of the rights and liberties of our citizens; as in so doing, we may open the doors to practices which may lead to other abuses and evils.

The industry of able counsel has failed to produce an adjudication by our appellate courts of this important question, yet repeatedly the principles governing the rights of the Commonwealth have been stated in such broad language that undoubtedly, the bench and bar have recognized those principles as applicable to facts which the present record presents. "The great principle of the trial by jury is, that the *court* shall determine the *law* and the jury the *facts*. Even in criminal cases, where the jury have a right to determine the law and the facts, 'they are to do so under the direction of the court,' and with a single exception, the court have an undoubted right to grant a new trial where the verdict is against evidence or law. The only exception to the rule is, that where a defendant is acquitted in a criminal case, he shall not be put in jeopardy a second time for the same offence. This principle, from the necessity of guarding the liberties of the people against the power of the government, has been so applied as to deprive the court of the power to grant a new trial in a criminal case where the verdict is in favor of the defendant": Guffy v. Com., 2 Grant's Cases, 65, 67. Where there has been a conviction on one count

and an acquittal on another, a new trial can be granted only on the count on which there has been a conviction: Hollister v. Com., 60 Pa. 103. By the Act of May 19, 1874, P. L. 219, it is provided that in a trial of all criminal cases the defendant may except to any decision of the court in the same manner as is provided and practiced in civil cases and "in cases charging the offense of nuisance or forcible entry and detainer, or forcible detainer, exceptions to any decision or ruling of the court may also be taken by the commonwealth ......" "To erroneous decisions made in the trial which may cause the acquittal of the accused, except in the three misdemeanors already mentioned, the Commonwealth cannot except and such decisions cannot be reviewed. But for error in quashing an indictment, arresting judgment after verdict of guilty, and the like, the Commonwealth may remove the record for review without special allowance of the proper writ": Com. v. Wallace, 114 Pa. 405, 6 A. 685. In Com. v. Wallace, 7 Pa. Superior Ct. 405, 406, it was stated: "There can be no doubt that in this state under the common law there can be no appeal to an appellate court where the verdict was one of not guilty. Has any such right been conferred by statute? By the act of May 19, 1874, it is provided that in cases of nuisance, forcible entry and detainer or forcible detainer exceptions may be taken by the commonwealth, and writs of error and certiorari issued by the Supreme Court. This act relates to but one subject in the title or the body of the statute: that of review by the Supreme Court in certain cases upon an appeal by the commonwealth. It must be conceded that unless we can find somewhere expressed in the letter of that act the purpose to grant to the trial judge the right to award a new trial in the criminal proceedings therein enumerated upon the motion of the commonwealth after a verdict of acquittal, that right does not exist at all. With the question as to what the legis-

lature should have enacted we have nothing to do; we are only concerned with that which they did enact. Let us consider whether the power to grant a new trial exists in a criminal case after an acquittal by verdict independently of the act of 1874, and then whether such power is embraced within its terms. The great weight of authority in the United States is against the exercise of any such power unless conferred by statute. See opinion of Justice GREY in United States v. Sanges, 144 U. S. 310. The English authorities are far from showing the existence of any such power: Rex v. Cohen et al., 2 E. C. L. 197, and the cases cited in the foot notes are authorities against its existence. The statement attributed to Lord KENYON in Rex v. Mawbey, 6 T. R. 619 that 'there is no authority to show we cannot grant a new trial' is wholly negative and does not imply that there is authority for the exercise of such power. In Rex v. Brice, 18 E. C. L. 196, all the judges concurred in refusing a new trial after acquittal; Chief Justice ABBOTT adding 'no new trial can be granted after a defendant has been acquitted unless on the ground of a misdirection of a judge.' No authority was cited for excepting this ground and after extended search, we have been unable to find any that clearly establishes it. In Rex v. Wandsworth, 18 E. C. L. 636, which involved the question whether a highway was a public or private one, Lord ELLENBOROUGH said: 'The rule is, you cannot have a rule for a new trial where the verdict has been given for the defendant.' His further statement as to giving the effect of a new trial by a rule in another shape can be understood only as a reference to a trial upon a new indictment for a subsequent obstruction of the highway; otherwise it is unintelligible.

"But whatever the English courts may have held, the practice in Pennsylvania from the origin of the commonwealth has been based upon the view that a verdict

of acquittal in a criminal case is the final determination of the case; and no case can be found in which a new trial has been granted at the instance of the commonwealth. If a new trial may now be granted because of a misdirection by a judge, the power to grant it is conferred by the act of 1874, and by that act vested solely in the appellate court. Whether this should be the law is not for us but the legislature to determine. We have however a clear conviction as to that which the legislature did enact. It being admitted that the judgment of conviction on the second trial was on the same indictment as that upon which the defendants were acquitted at the first trial, the judgment is reversed and the defendant discharged."

This was followed by Com. v. Coble, 9 Pa. Superior Ct. 215, 217, in which it was recognized that this court is powerless to correct errors in the charge of the court given on the trial of a criminal case which has resulted in an acquittal. In Com. v. Stillwagon, 13 Pa. Superior Ct. 547, upon an appeal from a verdict of not guilty, the court adhered to its ruling in Com. v. Coble, supra. In Com. v. Weber, 66 Pa. Superior Ct. 180, this court said: "The verdict of not guilty closed all investigation as to the merits of the case so far as both parties are concerned, and any discussion of the question involved would be purely academic.

"The question presented is, whether the Commonwealth has a right to be heard after a verdict of not guilty is returned by the jury. The rule is the same whether the verdict is the result of an error committed by the trial court, or to a perverse finding by the jury." "The verdict of a jury, upon a valid indictment, in a court of competent jurisdiction, acquitting the defendant of the fact is an absolute bar to any subsequent prosecution for the same offense": Com. v. McEvans, 92 Pa. Superior Ct. 124. In Com. v. Gabor, 209 Pa. 201, 58 A. 278, upon an indictment for murder, the

court said: "The English precedents above cited were made in criminal cases, and the only essential difference in the exercise of this power in civil and in criminal cases, is that in the latter the court may not put an additional burden on the prisoner. If the trial has resulted in an acquittal, error or no error, the prisoner is free of that charge."

These general principles were affirmed and reiterated in Com. v. Preston, 92 Pa. Superior Ct. 159; Com. v. Benson, 94 Pa. Superior Ct. 10; Com. v. Ahlgrim, 98 Pa. Superior Ct. 595; Com. v. Heiland, 110 Pa. Superior Ct. 188, 167 A. 439; Com. v. Pahlman, 118 Pa. Superior Ct. 175, 179 A. 910. See also Com. v. Masonheimer, 24 D. R. 810.

Conceding that in none of these cases do we find fraud or improper conduct upon the part of the defendant, yet the generality of the language adopted by these decisions admits of no exception, whether basic error upon the part of the court, perverse findings or improper conduct by the jury or either fraud or coercion by the defendant. Among the opinions of our lower courts in Com. v. Martin, 12 D. R. 644, the court said: "It is a familiar rule of the criminal law that a verdict of not guilty cannot be reviewed except in one instance, viz., where it is procured by fraudulent and corrupt practices on the part of the defendant"; but this was pure dicta, as the question was not involved nor did the court refer to any authorities in support of this principle. In the case of Com. v. Pflueger, 10 D. R. 717, where a new trial was sought by the Commonwealth where a verdict of not guilty was obtained by improper influences, in an opinion by Judge ENDLICH—whose opinions have always been most highly respected—a new trial was refused on the broad ground "that the principle protecting a defendant acquitted in a criminal case against being put in jeopardy again 'has been so applied as to deprive the court of the power to grant a

new trial in a criminal case where the verdict is in favor of the defendant.' " To this general rule he applied the following qualification: "Of course, there is, in what has been said, no reference to a verdict of acquittal obtained in a sham prosecution instigated by the defendant himself and managed by him with the view to forestalling, on the ground of such acquittal, a *bona fide* prosecution by the State. The doctrine applicable to such cases is discussed in Shideler v. State (Ind.), 14 Crim. L. Mag. 204." See Com. v. Bolton, 64 Pitts. L. J. 305.

Commonwealth submits for our consideration, Section 11 of the final draft of "Re-Statement of the Administration of the Criminal Law by the American Law Institute" on the subject of "Double Jeopardy," which is as follows: "§11. Misconduct, fraud or collusion—effect of. Where a person on trial for an offense has by his own conduct made it impossible for a valid judgment to be rendered against him; or where his conviction or acquittal of an offense was procured by his fraud or collusion or was procured by the fraud or collusion of another in his behalf, or was had in a prosecution fraudulently instituted with the object, known to the person prosecuted of procuring an advantage for him, he may be prosecuted again for the same offense," and cites a large number of cases from other jurisdictions which are noted in 16 C. J. 237, Note 36, Note 37. Most of the cases relate to proceedings before inferior tribunals and to prosecutions which were instituted by the defendant himself or by someone on his behalf, which clearly are sham prosecutions. But the present proceeding was clearly not a sham prosecution: defendant had been indicted, tried and convicted, and at the second trial the prosecution was represented by the assistant district attorney, a representative of the Women's Criminal Division of the Municipal Court and the prosecutrix. Under no circumstances could this

have been regarded as a sham prosecution. All of these cases we have examined with care, but find no legal grounds upon which we can change or amend the established practices and principles by which our courts have been governed.

There is no doubt that in civil cases a verdict, obtained by extrinsic or collateral fraud of the successful party, may be set aside; from which the Commonwealth argues that the present verdict should be set aside, as fornication and bastardy proceedings partake essentially of the character of civil process.

The indictment was founded upon the Act of March 31, 1860, P. L. 382, §37, (18 PS §711) which provides: "If any person shall commit fornication, and be thereof convicted he or she shall be sentenced to pay a fine not exceeding one hundred dollars, to the guardians, ...... of the poor ...... and such person, being thereof convicted, shall be sentenced, in addition to the fine aforesaid, to pay the expenses incurred at the birth of such child, and to give security by one or more sureties, and in such sum as the court shall direct, to the guardians, ...... of the poor ...... to perform such order for the maintenance of the said child as the court before which such conviction is had shall direct and appoint." It can undoubtedly be conceded that a prosecution for fornication and bastardy is different from an ordinary criminal proceeding as it partakes of the nature of a civil proceeding, in that settlements and compromises may be effected; but settlement made in bar of prosecution must be made in strict compliance with the ninth section of the Act of 1860: Com. v. Scott, 7 Pa. Superior Ct. 590. Yet in all other respects, it is a criminal proceeding: it is instituted by information and arrest, indictment and trial, and upon conviction sentenced by a fine and by an order of support. The act uses the terms "convicted," "sentenced to pay a fine," and "shall be sentenced, in addition to

the fine aforesaid," clearly indicating a criminal proceeding. In Com. v. Evans, 45 Pa. Superior Ct. 174, 178, in passing upon Section 37, supra, the court said: "Under the provisions of that section a part of the penalty on a conviction of fornication where a bastard child has been born as the result of such act is that the defendant pay in addition to the fine imposed the expenses incurred at the birth of such child and that he give security in such sum as the court shall direct to perform such order for the maintenance of the child as the court shall direct." Thus it appears, that although the offense is punishable by a fine and an order of support, it is in every essential a criminal offense, and is governed by the same principles as apply to other indictable offenses.

Our determination, that after the verdict of not guilty no power lies to set it aside, does not allow the wrong done to go unpunished, as such conduct as is disclosed in this case is in itself a substantive independent offense liable to be reached and punished as such.

We are of the opinion that the court below had no right to grant Commonwealth's motion for a new trial and, therefore, the order is reversed.