532 A.2d 477

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael COLEMAN, Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 1987.

Filed Oct. 16, 1987.

---

Dan Fitzsimmons, Assistant District Attorney, Pittsburgh, for Com., appellant.

Shelley Stark, Assistant Public Defender, Pittsburgh, for appellee.

Before WIEAND, KELLY and POPOVICH, JJ.

KELLY, Judge:

The Commonwealth appeals from an order granting arrest of judgment and discharge following the conviction of appellee, Michael Coleman, of two violations of the Uniform Firearms Act. We vacate the order granting arrest of

judgment, reinstate the verdicts of guilt, and remand for imposition of sentence.

## FACTS

On March 6, 1986, at 7:30 p.m., appellee entered a crowded beer and pizza shop in Pittsburgh, Pennsylvania, produced a .32 caliber automatic pistol, and fired a shot into the ceiling. No one saw appellee actually fire the shot. However, the owner of the bar, George Gregory (hereinafter "the owner"), and the bouncer, James T. Moore (hereinafter "the bouncer"), turned *instantly*, and observed appellee with a gun in his upraised hand and smoke from the discharge encircling his head. (N.T. 7/30/86 at 9, 23, 25–7). The owner, who was familiar with guns, was able to identify the gun as a black metal .32 or .38 caliber automatic with a barrel length of three and one-half to four inches in length. (N.T. 7/30/86 at 10–11, 36). The bouncer, who had heard guns discharged before, testified that the noise sounded like a gunshot and that the gun was a dark colored automatic revolver. (N.T. 7/30/86 at 23–4). The owner was eight feet from appellee; the bouncer was ten feet away from appellee. (N.T. 7/30/86 at 15, 23). There was ample lighting in the bar. (N.T. 7/30/86 at 10).

Appellee lowered the gun, engaged the safety, and stuck the gun in the front of his trousers. (N.T. 7/30/86 at 12, 15, 24). The owner produced a .45 caliber revolver he kept in a drawer behind the bar. (N.T. 7/30/86 at 9). The owner and the bouncer escorted appellee out of the bar; a friend of appellee placed himself between appellee and the bouncer on the way out, thereby preventing the bouncer from disarming appellee. (N.T. 7/30/86 at 9, 24).

The owner testified that he watched appellee leave, called the police, talked to the police, the investigating officers arrived, and then the appellee returned and was arrested— all in fifteen *seconds*. (N.T. 7/30/86 at 9, 13–14). The bouncer, on the other hand, testified that fifteen *minutes* elapsed before appellee returned and was arrested. (N.T. 7/30/86 at 24–5, 27). The investigating police officer testi-

fied that on the night of the incident he was told by either the owner or the bouncer (he could not recall which) that appellee had been thrown out of bar, returned about fifteen seconds later *and then left again* and did not return until about ten minutes later, after the police had arrived. (N.T. 7/30/86 at 31, 33). Both the owner and the bouncer positively identified appellee at the time of arrest and again at the trial; neither exhibited the least hesitancy or doubt. (N.T. 7/30/86 at 14, 18, 25, 31).

Appellee was searched at the time of his arrest; no gun was discovered. (N.T. 7/30/86 at 31). A spent cartridge case from a .32 caliber automatic revolver was found under a cigarette machine about five feet directly behind where appellee had been standing with the gun in his upraised hand. (N.T. 7/30/86 at 31–32, 36, 45). The Commonwealth's firearms expert testified that markings on the cartridge case indicated that the cartridge was struck by a rectangular and pointed firing pin distinctive of a few types of spanish automatic loading pistols; there was an ejector mark on the cartridge case as well. (N.T. 7/30/86 at 46). Both the owner and the expert explained that a properly operating automatic revolver automatically expels the spent cartridge when the gun is fired. (N.T. 7/30/86 at 38, 45–47).

At the request of the police, the owner got a ladder and retrieved a slug from the plaster ceiling above the spot where appellee stood with the gun in his upraised hand. (N.T. 7/30/86 at 16, 32). The owner testified that he had never seen anyone else shoot into the ceiling before, and that his partner had never mentioned any such incident to him. (N.T. 7/30/86 at 20). The expert indicated that the slug was without rifling marks, and was probably the light core of a jacketed bullet; the weight of the fragment was consistent with that of a .32 caliber bullet. (N.T. 7/30/86 at 48). However, the expert conceded that he could not be certain that the spent cartridge case and slug came from the same bullet or the same gun. (N.T. 7/30/86 at 50). He also conceded that because lead is soft and grains can be

lost as it strikes or passes through various objects, the slug could conceivably have come from a higher caliber bullet. (N.T. 7/30/86 at 48). Finally, the expert testified that although the age of the spent cartridge case and slug could not be ascertained with any degree of certainty, the spent cartridge case did not show signs of weathering conditions and the lead slug did not appear to be heavily oxidized. (N.T. 7/30/86 at 51).

Appellee was charged by information with: carrying a firearm without a license, 18 Pa.C.S.A. § 6106; former convict not to own a firearm, 18 Pa.C.S.A. § 6105; and recklessly endangering another person, 18 Pa.C.S.A. § 2705. On July 30, 1986, appellee waived his right to a jury trial and was tried by a judge. Following the presentation of the Commonwealth's case, appellee entered a demurrer to each of the charges. The trial judge sustained the demurrer to the recklessly endangering another person charge but denied the motion as to the firearms charges. Appellee thereupon rested without presenting any evidence. The trial court found appellee guilty of both the firearms charges.

On August 5, 1986, appellant filed a motion in arrest of judgment which stated:

1. The Commonwealth failed to establish the defendant's guilt as to Count I and Count II [the firearms offense] beyond a reasonable doubt.

2. In particular the Commonwealth failed to establish that the defendant had in his possession an operable firearm, as required by the Uniform Firearms Act.

On August 11, 1986, appellee was directed to present, at a hearing to be held on August 22, 1986, a concise, written statement of matters to be argued to the court at the time of argument. On August 22, 1986, appellee presented the court with a "Statement of the Issue Presented" which asserted that the Commonwealth failed to establish beyond a reasonable doubt that the gun, which the witnesses stated they saw in appellee's upraised hand, was operable. (*See also* N.T. 8/22/86 at 3) (defense counsel states, "I perceive

the issue to be whether there was sufficient evidence to establish the operability of the firearm.").

Following argument the trial court concluded:

I don't think the issue of operability which is a key element in the offense of a violation of the Uniform Firearms Act, can be made after my research of the law, and based on that I will grant a motion in arrest of judgment on this case.

(N.T. 8/22/86 at 15). An order memorializing this ruling was filed by the trial court the same day.

The Commonwealth filed timely notice of appeal on August 28, 1986. On September 2, 1986, the trial court directed the Commonwealth to file a concise statement of matters complained of on appeal and a brief in support thereof pursuant to Pa.R.A.P. 1925(b) within twenty (20) days.[1] On September 8, 1986, the Commonwealth filed a brief containing a statement that the trial court erred in granting appellee's motion to arrest judgment as the evidence was in fact sufficient to sustain the convictions, and argument in support of this contention. The trial court filed an opinion in support of its order granting arrest of judgment on November 3, 1986.

## I.

Before we may address the merits of the Commonwealth's appeal, we must address three challenges to the jurisdiction of this Court raised in appellee's brief.[2] Appellee contends: because there is no express statutory authority for this appeal, it must be quashed; no statute could authorize this appeal, because the arrest of judgment was an insufficiency finding; and, the Commonwealth may not appeal from the factual determination herein. We cannot

---

1. We note that Pa.R.A.P. 1925(b) does not authorize the trial court to require appellant to file a brief in support of the concise statement of matters complained of on appeal. However, the brief was filed and no objection was raised.

2. We address these challenges without benefit of a reply regarding these issues from the Commonwealth. No request was made pursuant to Pa.R.A.P. 2501 to respond to these issues.

agree. We shall discuss each of appellant's contentions *seriatim.*  •

### A.

■ Appellant first contends that in absence of express statutory authorization, the Commonwealth has no right to take an appeal from an order granting an arrest of judgment and that this Court has no jurisdiction to entertain such an appeal. Appellee cites in support of this proposition *United States v. Scott,* 437 U.S. 82, 84, 98 S.Ct. 2187, 2190, 57 L.Ed.2d 65 (1978), and *United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975). Appellant argues that 42 Pa.C.S.A. § 742 does not constitute express statutory authority for an appeal in the instant case. *See Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 471, 491 A.2d 1352, 1353 (1985); *accord United States v. Wilson, supra,* 420 U.S. at 336, 95 S.Ct. at 1018. Appellant argues further that the existence of express statutory authority for appeals by the Commonwealth in other circumstances indicates an intent by the legislature to prohibit such appeals. Appellee cites in support of this proposition *Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979), the rules of statutory construction, 1 Pa.C.S.A. § 1901 *et. seq.,* and the following examples of express statutory authorization for Commonwealth appeals: 42 Pa. C.S.A. §§ 9712(d); 9713(e); 9714(e); 9715(d); and 75 Pa.C. S.A. § 3731(e)(4, 5). (Appellant's Brief at 3–4a).

Initially, we note that appellant's reliance on *United States v. Scott, supra,* and *United States v. Wilson, supra,* is misplaced. Both *federal* cases cite *United States v. Sanges,* 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892) in support of the proposition urged instantly. In *United States v. Sanges, supra,* the United States Supreme Court was called upon to determine whether express statutory authority was required to permit a writ of error to be taken from a federal district or circuit court to the United States Supreme Court. The Supreme Court noted that the "law of England on this matter is not wholly free from doubt," but

regardless of the English rule the "overwhelming weight of American authority" was that express statutory authorization was required in accordance with the common law. 144 U.S. at 314, 12 S.Ct. at 610. The Supreme Court reviewed decisions from numerous states in favor of the requirement of express statutory authorization and then discounted those decided against the proposition, stating:

> In those states in which the government, in the absence of any statute·expressly giving it the right, has been allowed to bring error, or appeal in the nature of error, after judgment for defendant on demurrer to the indictment, motion to quash, special verdict or motion in arrest of judgment, the question appears to have become settled by early practice before it was contested.

144 U.S. at 316, 12 S.Ct. at 611. The Supreme Court then concluded "the common law as generally understood and administered in the United States" required express statutory authority for such appeals. 144 U.S. at 318, 12 S.Ct. at 612. Thus, the proposition urged by appellee became accepted as part of the *federal* appellate law.

The Court did not, and under our federal system could not, impose this assessment of the state of the common law on the states which had come to a contrary conclusion. In *United States v. Worrall*, 2 Dallas 384, 393, 1 L.Ed. 426 (Pa.Dist.1798), Justice Chase explained:

> If, indeed, the United States can be supposed, for a moment, to have a common law, it must, I presume, be that of England; and yet, it is impossible to trace when, or how, the system was adopted or introduced. With respect to the individual states, the difficulty does not occur. When the American colonies were first settled by our ancestors, it was held, as well by the settlers, as by the judges and lawyers of England, that they brought hither, as a birth-right inheritance, so much of the common law, as was applicable to their local situation, and change of circumstances. *But each colony judged for itself, what parts of the common law were applicable to its new condition; and in various modes, by legislative*

*acts, by judicial decisions, or by constant usage, adopted some parts, and rejected others. Hence, he who shall travel through the different states, will soon discover, that the whole of the common law of England has been nowhere introduced; that some states have rejected what others have adopted; and that there is, in short, a great and essential diversity, in the subjects to which the common law is applied, as well as in the extent of its application. The common law, therefore, of one state, is not the common law of another; but the common law of England is the law of each state, so far as each state has adopted it; ....*

(Emphasis added).

Therein lies the defect in appellee's argument; this Commonwealth has never adopted the common law rule upon which appellee's argument is predicated. Indeed, the rule was expressly rejected. In *Commonwealth v. Capp*, 48 Pa. 53, 56 (1864), our Supreme Court stated:

There is nothing in the disabling provisoes of the statutes to limit the right of the Commonwealth, and the powers of this court, whether deduced from the common law, from the old provincial Act of 1722, or from legislation under our state constitutions, are quite competent to the review of any judicial record, when no statutory restraints have been imposed. *See Commonwealth v. Simpson*, 2 Grant's Cases 443.

It would be very strange if the Commonwealth might not appeal to her own tribunals for justice, without the special consent of certain of her own officers. The abuses and evils which would come from an indiscriminate indulgence of defendants cannot be expected to spring from the rare instances in which the sovereign would invoke the appellate jurisdiction, and hence no restraints have been imposed by statute upon the sovereign, and we will impose none by judicial construction.

Pennsylvania's rejection of the common law rule was noted by the United States Supreme Court in *Sanges, supra*, 144 U.S. at 317–18, 12 S.Ct. at 611–612.

118

In *Commonwealth v. Simpson*, 310 Pa. 380, 383, 165 A. 498, 498–99 (1933), our Supreme Court explained further:

The first question which confronts us is the right of the Commonwealth to appeal, defendant contending that it has no such right, citing in support of his position the authorities set forth in the note. The criminal law must move forward to meet the new conditions which confront organized society if its law-abiding members are to be protected in their personal and property rights. Whatever the rule may have been in past decades, we think now when there is such wide latitude allowed those convicted of crime to appeal and have their convictions reviewed, there should be a liberalizing of the attitude towards the Commonwealth, where the defendant has been convicted, and the question ruled against the Commonwealth, as here, is purely one of law. This is what we intended when we said in *Com. v. Wallace*, 114 Pa. 405, 411 [6 A. 685], 'For error in quashing an indictment, arresting judgment after verdict of guilty, and the like, the Commonwealth may remove the record for review without special allowance of the proper writ.'

(Footnote and emphasis omitted).

Thus, the absence of express statutory authorization for Commonwealth appeals from orders in arrest of judgment and similar issues of law results not from a legislative intent to prohibit such appeals but from the lack of necessity for such authorization. For one hundred and seventy-five (175) years appellate courts of this Commonwealth have properly entertained appeals by the Commonwealth from orders granting a defendant arrest of judgment. *Commonwealth v. Taylor*, 5 Binn. 277 (Pa.1812); *Commonwealth v. Fitzhugh*, 360 Pa.Super. 217, 520 A.2d 424 (1987). We have neither the authority nor the inclination to disturb this settled practice; the first jurisdictional challenge is rejected.

### B.

■ Appellee's second contention is that no statute could authorize the appeal herein because the arrest of judgment

is an insufficiency finding. Appellee argues that when a trial court makes an insufficiency finding, the order arresting judgment terminates the initial jeopardy and state and federal double jeopardy proscriptions bar appeal or retrial. Appellee cites in support of this contention the opinion of this Court in *Commonwealth v. Smalis*, 331 Pa.Super. 307, 480 A.2d 1046 (1984), *rev'd sub nom. Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985), *rev'd sub nom. Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986).

Appellee's argument fails to take cognizance of the crucial distinction between pre-conviction and post-conviction determinations of the sufficiency of the evidence made by the United States Supreme Court in *Commonwealth v. Wilson, supra,* and again in *Smalis v. Pennsylvania, supra.* In *Commonwealth v. Fitzhugh, supra,* after review and consideration of *Wilson, Smalis* and other relevant Supreme Court decisions, this Court explained:

> Following the reasoning in [*United States v. Wilson, supra,* and *Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) ], we find that an arrest of judgment entered following a jury verdict of guilt does not become the functional equivalent of a verdict of acquittal until a final appellate decision upon the legal sufficiency of the evidence is made in the defendant's favor. A decision by an intermediate appellate court, including a trial judge entertaining post-verdict motions, does not terminate the initial jeopardy.

520 A.2d at 428. Appellee's second jurisdictional challenge is without merit.

## C.

Finally, appellee contends that the Commonwealth may not appeal the *factual* determination which ended the prosecution herein. Appellee argues that the actual holding of the trial court must be examined to determine the nature of the trial court's order—whether it was a factual or legal determination. Appellee argues that the Commonwealth

may only appeal pure questions of law and that the appeal in the instant case does not present such a question. Appellee asserts that the order granting arrest of judgment "was based upon a *factual* determination that the *facts* were insufficient to prove guilt." (Appellee's Brief at 10). (Emphasis supplied).

Appellee apparently misapprehends the nature and limits of a trial court's authority to grant an arrest of judgment. "The question of the sufficiency of the evidence to sustain a verdict is in fact a question of law, and has been recognized as an area which permits an appeal by the Commonwealth from an adverse ruling." *Commonwealth v. Rawles*, 501 Pa. 514, 519, 462 A.2d 619, 621 (1983). "The effect of a motion in arrest of judgment is to admit all the facts which the Commonwealth's evidence tends to prove." *Id.*, 501 Pa. at 520, 462 A.2d at 622 (citing cases). "All of the evidence must be read in the light most favorable to the Commonwealth, which is entitled to all reasonable inferences arising therefrom." *Id.; see also Commonwealth v. Hanes*, 361 Pa.Super. 357, 359–61, 522 A.2d 622, 623–24 (1987).

If indeed the trial court's order arose from a *factual* determination that the facts were not sufficient to sustain the verdicts, then the trial court exceeded its authority. This Court explained in *Commonwealth v. Gaither*, 355 Pa.Super. 502, 504, 513 A.2d 1034, 1035 (1986):

> It is clear that a trial judge has no more authority over a verdict in a non-jury trial than he does over a jury verdict. Following the recording of a verdict in a non-jury trial, the trial judge is limited to a consideration of post-verdict motions in arrest of judgment or the granting of a new trial. *In a motion for arrest of judgment, the trial judge cannot alter the verdict based upon a redetermination of credibility or a re-evaluation of the evidence.*

(citations omitted, emphasis added); *see also Commonwealth v. Gaither, supra*, 513 A.2d at 1037 (Wieand, J., concurring), *quoting Commonwealth v. Nelson*, 245 Pa.Super. 33, 38–9, 369 A.2d 279, 282 (1976). Thus, we find no merit in appellee's third and final challenge to the jurisdic-

tion of this Court, and we may now turn to consideration of the merits of the appeal.

## II.

The Commonwealth contends on appeal that the trial court erred in finding that the evidence was insufficient to establish the operability of the firearm involved. Appellee responds that: *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973), supports the order of the trial court; and that the issue of operability was only one of a long list of questions the court entertained concerning the adequacy of the Commonwealth's evidence. We agree with the Commonwealth that the trial court erred.

In *Commonwealth v. Horshaw*, 237 Pa.Super. 76, 346 A.2d 340 (1975), this Court stated:

... the appellant claims that the evidence did not indicate that the weapon involved was operable. The Commonwealth, however, need not show the weapon to have been operable until evidence of its inoperability has been introduced into evidence.

346 A.2d at 342. In *Commonwealth v. Lee*, 224 Pa.Super. 17, 302 A.2d 474 (1973), an *en banc* panel of this Court held that any evidence establishing that the defendant used an object which reasonably appeared to be a firearm is sufficient evidence to establish the use of a firearm "unless and until evidence is presented by either side establishing the inoperability of the gun involved." 302 A.2d at 475; *see also Commonwealth v. Fitzhugh, supra*, 520 A.2d at 432.

*Commonwealth v. Layton, supra*, cited by appellee, does not support appellee's contention. In *Layton*, our Supreme Court merely held that *when all parties agree that the gun was not operable*, then the presumption of operability described in *Lee, supra* (applied subsequently in *Horshaw, supra*, and *Fitzhugh, supra*) did not apply. *See Commonwealth v. Layton, supra*, 307 A.2d at 844. Such is not the case instantly; hence, *Layton, supra*, is inapposite.

The Commonwealth presented testimony from two witnesses who heard a gunshot, turned instantly, and ob-

served appellee with a gun in his upraised hand and smoke from the discharge encircling his head. (N.T. 7/30/86 at 9, 23, 25–7). This evidence alone is sufficient evidence under *Fitzhugh, Horshaw,* and *Lee* to establish that appellee possessed a firearm. We find no evidence in the record establishing the inoperability of the gun. Appellee's attempts to elicit testimony that the gunshot could have come from another gun or that the slug in the ceiling and the spent cartridge could have come from another incident were singularly unsuccessful. (N.T. 7/30/86 at 20, 27) (the testimony was that there had been no previous shooting incidents, and that appellee did not have enough time between the time the bouncer heard the shot and then saw the gun in appellee's upraised hand for appellee to have reacted to the gunshot by drawing his gun). Moreover, when the facts of record (as set forth *supra*) are considered in the light most favorable to the Commonwealth, the sufficiency of the evidence to establish the operability of the revolver is readily apparent.

■ Appellee's second argument in support of the trial court's order—that operability of the firearm was only one of several issues as to which reasonable doubt existed—is without merit. The only issue properly preserved by a sufficiently specific post-verdict motion was the sufficiency of the evidence to establish the operability of the firearm. *See Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983). Moreover, we note that upon review of the record, the briefs of the parties, and the opinion of the trial court, we find that the evidence viewed in the light most favorable to the Commonwealth is more than sufficient to sustain the verdicts as to each element of each of the firearms offenses.

## CONCLUSION

Based upon the foregoing, we vacate the order granting arrest of judgment and discharge, reinstate the verdicts of guilt, and remand for imposition of sentence.