580 A.2d 868

COMMONWEALTH of Pennsylvania, Appellant,

v.

Laurel June CAMPBELL, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Wayne Arnold CAMPBELL, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 7, 1989.

Filed Sept. 28, 1990.

Ross McKeirnan, Warren, for appellees.

Before DEL SOLE, KELLY and HESTER, JJ.

DEL SOLE, Judge:

██ These are appeals by the Commonwealth from an order granting, Appellees, Wayne and Laurel Campbell, a motion in arrest of judgment[1] following their jury conviction of Endangering the Welfare of a Child, 18 Pa.C.S.A. § 4304. The question presented is whether or not there is sufficient evidence to support a guilty verdict against parents whose thirteen year old daughter became pregnant. Having reviewed the record, we affirm the decision of the trial court.

Appellees' thirteen year old daughter, Stephanie, met an eighteen year old young man named Chad sometime in July of 1988. He was permitted to visit Stephanie at Appellees' home while they were present. During July, Stephanie and Chad engaged in sexual intercourse on various occasions in

---

1. The trial court granted Appellees' post-verdict motions alleging insufficient evidence to sustain the verdict, but instead of granting the motion in arrest of judgment, the trial court improperly labelled the relief a judgment non obstante verdicto. An allegation that the evidence is insufficient to support a conviction is properly the basis for a motion in arrest of judgment. *Commonwealth v. Leatherbury*, 322 Pa.Super. 222, 469 A.2d 263 (1983). However, we do understand what the trial court intended to do and in effect did by concluding that the evidence was insufficient to sustain the verdict. Therefore, we will use the proper term of motion in arrest of judgment.

the Appellees' home. At one point, Stephanie became concerned about pregnancy and had a pregnancy test taken. The physician, Dr. McGeary, performed the test which was negative. In conveying the test results, Dr. McGeary spoke with Laurel Campbell, Stephanie's mother. He advised that he would not recommend administering birth control pills to a thirteen year old but that pregnancy would be very unhealthy for a child of that age since the complications of obstetrical procedures under age fifteen are on average, much increased. Later, on August 1st, Dr. McGeary administered another pregnancy test to Stephanie which was repeated the following day. Both of these tests were positive. At the time of trial Stephanie was pregnant. Chad was charged with three counts of statutory rape, but under a plea agreement with the Commonwealth, if he testified in this case he would be placed in an ARD program, and if successfully completed, statutory rape charges would be dropped. There was no evidence in this case that the Appellees permitted, condoned, fostered or prompted Stephanie's sexual activity which led to her pregnancy. Following a jury verdict of guilty, the trial court granted the defendant's motion.

The Commonwealth claims that it presented sufficient evidence for a jury to convict the appellees of endangering the welfare of a child.

> In reviewing an appeal from a trial court's granting of motion in arrest of judgment, we must determine whether the evidence offered by the Commonwealth was legally sufficient to support the verdict. To reach this determination, we accept all of the evidence and all reasonable inferences therefrom, upon which the fact-finder could have based the verdict; we can affirm the granting of a motion in arrest of judgment if, viewed in that manner, the evidence was nonetheless insufficient in law to find guilt beyond a reasonable doubt as to the crimes charged. *Commonwealth v. Robinson*, 351 Pa.Super. 309, 505 A.2d 997, 998 (1986). [Citations omitted.]

Endangering the Welfare of Children, 18 Pa.C.S.A. § 4304, provides:

> A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the first degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

In *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770 (1976), our Supreme Court held that this statute will be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted. The facts in *Mack* had not been established and, therefore, were not set forth on the record. The Supreme Court determined that it could only decide whether the statute contained an ascertainable standard and whether standard infringes upon first amendment rights. The Court held that § 4304 was not facially vague but "the 'vagueness' issue may be finally determined only with reference to the conduct of the person challenging the statute." *Mack*, supra 359 A.2d at 772. In *Mack*, the Court also stated:

> The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it. [Citing *Commonwealth v. Marlin*, 452 Pa. 380, 386–87, 305 A.2d 14, 18 (1973).]

The Official Comment to Section 4304 provides further guidance with respect to the statute, it states "The offense involves the endangering of the physical or moral welfare of a child by an act or omission in violation of legal duty even though such legal duty does not itself carry a criminal sanction." (Purdon's 1986)

In the case sub judice, the Commonwealth cites the following inapposite cases for the very unique fact scenario we have before us. In *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984), the defendant, the father of one of the two teenage girls he abused, was convicted under

§ 4304 for choking them, grabbing at their genitals, exposing his genitals and telling his daughter that he could prevent her pregnancy by using the condoms he removed from his pocket. In *Commonwealth v. Ogin*, 373 Pa.Super. 116, 540 A.2d 549 (1988), the parents of a seventeen month old girl were found guilty of simple assault and endangering the welfare of a child for using excessive force against their little girl by dragging the child, flinging her against a building and pushing her face in hot food among other things. In *Ogin*, we held that parents have the responsibility to advance physical, mental, and emotional health of their children, and extreme acts or grave omissions which adversely affect the child may come within the scope of § 4304. In *Commonwealth v. Barnhart*, 345 Pa.Super. 10, 497 A.2d 616 (1985), where the parents of a two year old boy were convicted of involuntary manslaughter and endangering the welfare of a child for failing to provide their son with medical attention resulting in the child's death from cancer. Appellant's were members of the Faith Tabernacle Church and were relying on God for a cure to the exclusion of modern medicine.

The Commonwealth also cites *Commonwealth v. Cardwell*, 357 Pa.Super. 38, 515 A.2d 311 (1986), where this court held that evidence is sufficient to prove the intent element of the offense of Endangering the Welfare of a Child when the accused is aware of his or her duty to protect the child, is aware that circumstances exist that threaten the child's physical or psychological welfare and has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare.

In *Cardwell*, we determined that the crime of endangering the welfare of a child is a specific intent crime and the intent required is the knowing violation of a duty of care. We then looked to the definition of culpability under 18 Pa.C.S.A. § 302(b) which provides, in part:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

In *Cardwell,* the mother was charged with endangering the welfare of her daughter for failing to take sufficient steps to protect the child from the child's stepfather. For a period of four years, beginning when the child was eleven years of age, the stepfather sexually abused her, twice resulting in the child becoming pregnant. The Commonwealth provided evidence that the mother had direct knowledge of her husband's sexual intercourse with her daughter but failed to remove the child from the situation or to protect her.

With the exception of *Cardwell,* the above cases are easily distinguished from the present case since they all involve physical abuse by the parents or guardian. In this case, the person who took sexual advantage of Stephanie was not a parent or guardian. *Cardwell* is somewhat similar to this case in that the mother was prosecuted for failing to intervene to prevent abuse. However, in *Cardwell,* the mother did in fact know that her husband had impregnated her child twice and had continued with a pattern of abuse but she did not remove her from the home. In the instant case, the relationship between Stephanie and Chad with the ensuing pregnancy all occurred within a span of less than a month.

Admittedly, Appellees have an obligation to protect their child from any physical or psychological harm known to them. The Commonwealth alleges that Appellees had a duty to prevent their thirteen year old daughter from becoming pregnant, if they knew the sexual activity was continuing in their home while they were present. The Commonwealth contends that if Appellees were aware of Stephanie's sexual activity and failed to prevent it from

recurring, they have breached a duty of care to protect their daughter.

Stephanie Campbell testified that she did not tell her parents that she engaged in sexual activity and that she and Chad would sneak upstairs while her parents were home. After the first pregnancy test in July, obviously, the Appellees were aware that Stephanie had engaged in sexual activity. A caseworker from the Children and Youth Services testified that Mrs. Campbell told him that she knew Stephanie had engaged in sexual activity after the first pregnancy test, and, she was promoting the marriage of Stephanie to Chad. Further, Mr. Campbell advised that he had not discussed with his daughter the appropriateness of her being sexually active with an adult male.[2]

■ Viewing this evidence in a light most favorable to the verdict winner, in this case the Commonwealth, and drawing the proper inferences from the evidence in the Commonwealth's favor, we do not believe that the Commonwealth submitted sufficient evidence to prove that the Appellees endangered the welfare of their child. Section 4304 requires that a parent intentionally violates a duty of care, protection or support. However, this section does not contemplate that parents shall be found guilty because their children have become sexually active or pregnant. We hold that merely establishing that a teenage child has engaged in sexual activity or, has become pregnant is not sufficient to establish a violation of the statute on the part of the parents of that child. Even a parents' knowledge that a child is sexually active is not sufficient to impose criminal responsibility.

2. The testimony shows that the child sought the first pregnancy test without advising her parents of her concerns. Also, the testimony of her physician is that he instituted the conversation about birth control pills and stated his reluctance to prescribe them. There is no evidence in the record to support the conclusion that either parent sought birth control pills for the child. Also, there is no evidence in the record to support the inference in the Dissenting Opinion that the parents encouraged and promoted a sexual relationship between their daughter and the young man. Rather, the evidence is that the mother stated she was promoting their marriage.

It would be an impossible burden to place upon parents to require them to know everything there is to know about their child's activities. In Pennsylvania, thousands of teens become pregnant each year, and we cannot use § 4304 to criminally punish the parents of these children simply because their child became pregnant. We do not mean to imply that we approve of teen sexual activity, however, many teens engage in that activity without their parents' consent and/or knowledge. Section 4304 was not intended to provide criminal sanction of parents merely because their teenage children became sexually active or pregnant. Here, the Commonwealth has not shown any acts on the part of these Appellees that would be deemed to have endangered the child. The child's sexual activity and the resultant pregnancy were a result of her own actions and not the result of any activities fostered or condoned by the parents. Section 4304 was simply not intended to cover the circumstances presented in this case.

Order of the trial court affirmed.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

While I agree with many of the concerns expressed by the majority, I find that I am constrained to respectfully dissent.

This case involves a Commonwealth appeal from a post-verdict order vacating appellees' convictions of reckless endangerment based upon the trial court's conclusion that the evidence was insufficient to sustain the verdict. I find the limited scope of the trial court's authority in such matters critical to my analysis of this case.

The law in such matters is well-settled. The Commonwealth has a right to appeal from a post-verdict order vacating a conviction based upon an alleged insufficiency of the evidence. On appeal, we are constrained to view the evidence in the light *most favorable* to the Commonwealth, and the Commonwealth must be given the benefit of *all*

reasonable inferences derivable from the evidence. *Commonwealth v. Grayson,* 379 Pa.Super. 55, 58, 549 A.2d 593, 594 (1988); *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 329, 534 A.2d 106, 108 (1987); *Commonwealth v. Cardwell,* 357 Pa.Super. 38, 47, 515 A.2d 311, 315 (1986); *Commonwealth v. Reddix,* 355 Pa.Super. 514, 523–24, 513 A.2d 1041, 1045 (1986). In this respect it is important to note that the effect of a motion in arrest of judgment is to admit all the facts which the Commonwealth's evidence tends to prove, and that the trial court has no authority to engage in a post-verdict redetermination of credibility or a re-assessment of the weight to be accorded the evidence in determining the legal question of sufficiency. *See Commonwealth v. Coleman,* 367 Pa.Super. 108, 120, 532 A.2d 477, 483 (1987) (collecting cases).

The evidence, viewed in the light most favorable to Commonwealth as we must, establishes the following. Appellees were aware that their thirteen year old daughter was engaging in sexual intercourse with an eighteen year old man in their home (N.T. 1/24/89 at 21–22); that appellees were aware of the dangers involved in a thirteen year old's pregnancy (*Id.* at 6–7); that appellees failed in any way to prevent their daughter from continuing to have sexual relations in their home (*Id.* at 21–22); that appellees failed to talk to their daughter about the consequences of her sexual activities (*Id.* at 6); that appellees allowed their daughter to go unsupervised into her bedroom alone with the man whom they knew was having sexual intercourse with her while appellees were home (*Id.* at 11 and 22); and that appellees' daughter became pregnant as a result of these sexual relations. The jury found this evidence to be sufficient to convict the appellees under the relevant statute. Due to our narrow scope of review, I find the trial court exceeded its authority and in this particular case, and I feel compelled to dissent.