J-A19005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MAHMOUD MOHAMED AHMED | : | No. 1143 MDA 2021 |
| IBRAHIM | : | |

Appeal from the Order Entered August 5, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003070-2020

BEFORE:  BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 13, 2022**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the August 5, 2021 order granting Mahmoud Mohamed Ahmed Ibrahim's oral motion in arrest of judgment on his conviction for sex assault.  After careful review, we reverse and remand for further proceedings.

On February 26, 2018, Lillian and Lucas Miller invited Courtney Custer ("victim") and Appellee over to their house with the intent of introducing them to each other.  N.T. Jury Trial, 6/24-25/21, at 29, 95.  Appellee and the victim met and spent several hours talking.  *Id*. at 29-30.  In the early hours of February 27, 2018, the Millers went to sleep in their bedroom.  *Id*. at 30-31.  In the living room, the victim and Appellee put on a movie and reclined on a double chair with an arm rest separating the two seats.  *Id*. at 30, 32-34.  A

---

[*] Former Justice specially assigned to the Superior Court.

short time later, Appellee began kissing the victim's neck repeatedly. *Id*. at 34. Despite her requests to stop, Appellee continued kissing the victim, lowered her pajama bottoms, forcefully inserted his penis into her vagina, and began thrusting violently. *Id*. at 37-40. When Appellee briefly paused to readjust himself, the victim escaped to a nearby bathroom. *Id*. at 40-41. Sometime later, Lillian found the victim in the bathroom and, after the victim told her what happened, transported the victim to the hospital for a sexual assault examination. *Id*. at 41-43, 89-90.

At the hospital, medical professionals took photographs of bruises and scratches to the victim's neck, chest, legs, and buttocks. *Id*. at 44, 74, 138-47. An internal examination revealed blunt force trauma to the victim's cervix. *Id*. at 134. The sexual assault kit also indicated the presence of DNA that matched Appellee. *Id*. at 136-38. The Pennsylvania State Police ("PSP") reported to the hospital and interviewed the victim, who identified Appellee as the perpetrator. The PSP interviewed Appellee twice. Initially, he denied the events had occurred. *Id*. at 165-66. However, mid-interview, Appellee conceded that he met and had consensual sex with the victim, because she "was asking for it." *Id*. at 166-67. In his second interview, Appellee professed his "love" for the victim, stated that he wanted her to be his wife, and showed the officers approximately 160 unanswered text messages he had sent to her after the incident. *Id*. at 46-48, 178-79, 181-86, 188, 190-91. Ultimately, Appellee was arrested and charged with rape – forcible compulsion and sexual assault.

While the charges were pending, Appellee was taken into the custody of Immigration and Customs Enforcement ("ICE") and incarcerated at York County Prison pending his removal to Egypt. Appellee initiated a voluntary removal to expedite the process. As a result, the Dauphin County District Attorney's Office filed a motion with the lower court to set bail, which was granted.

On June 24, 2021, Appellee proceeded to a jury trial. Before the jury was brought into the courtroom, trial counsel requested that there be "no mention of [Appellee's] immigration status or . . . incarceration." *Id*. at 5. The Commonwealth agreed to this oral motion *in limine* and ensured that all Commonwealth witnesses abided by its terms for the duration of its case-in-chief. *Id*. at 6-7. After the Commonwealth concluded its case, Appellee called his landlord as a character witness. *Id*. at 194-98. On cross-examination, and after confirming that the witness identified herself as Appellee's "current" landlord, the Commonwealth questioned whether Appellee "currently" paid the landlord rent. *Id*. at 199. In response, the landlord responded, "how can he, he's been in prison for a year." *Id*.

The trial court immediately interrupted the questioning and issued a cautionary instruction telling the jury to disregard the reference to Appellee's incarceration, as "sometimes people charged with serious offenses spend some time incarcerated. Whether someone is incarcerated or not has nothing to do with whether [they are] innocent or guilty of an offense." *Id*. Appellee did not object to the Commonwealth's question or the court's instruction.

- 3 -

Instead, the prosecutor resumed her cross-examination of the witness. *Id*. at 199-200. Afterwards, Appellee conducted a brief redirect examination, and the witness was excused. *Id*. at 200-202.

Once the jury exited the courtroom, Appellee asked for a mistrial on the grounds that the Commonwealth's cross-examination of Appellee's character witness violated the terms of the motion *in limine* order. *Id*. at 204. The Commonwealth responded that they posed the question to establish bias and did not intend to elicit the response received. *Id*. at 204-05. The trial court agreed that the violation was unintentional and denied Appellee's request for a mistrial. *Id*. at 206. Furthermore, the court found that the statement was not impactful, since many members of the public were likely already aware that suspects are often incarcerated pending trial. *Id*. at 206-07. Accordingly, the court found that its cautionary instruction was sufficient to cure any prejudice Appellee may have suffered, noting that it was immediately issued, and jurors were nodding in the affirmative while it was delivered. *Id*. at 206. Ultimately, the jury convicted Appellee of sexual assault, but was unable to reach a unanimous verdict on the rape count. Thus, the court granted a mistrial on the rape charge. *Id*. at 273.

After the verdict was announced and the jury had been dismissed, Appellee made an oral motion for an arrest of judgment, arguing that the court erred when it denied Appellee's prior request for a mistrial. *Id*. at 278. The Commonwealth reiterated its earlier argument, and the trial court took the matter under advisement, requesting that the notes of testimony be

transcribed and that the parties submit briefs in support of their respective positions. *Id*. at 279. After reviewing the trial transcript and the post-verdict briefs, the trial court issued an order and opinion granting Appellee's oral motion for arrest of judgment and vacating the sexual assault verdict. *See* Order, 8/4/21, at 1-3. In the opinion, the trial court found that the Commonwealth should have known that the question posed would elicit a response that would violate the motion *in limine* order and that the "error was so manifest that immediate relief [was] essential." *Id*. at 2-3.

The Commonwealth filed a motion for reconsideration and the court held a hearing. At the hearing, the parties stipulated that defense counsel did not inform the character witness of the parameters of the motion *in limine* order. *See* N.T. Motion Hearing, 8/19/21, at 4. Additionally, the trial prosecutor testified consistently with her earlier statements regarding her cross-examination of Appellee's character witness and her attempt to elicit bias. *Id*. at 7-16. Following the hearing, the court denied the motion for reconsideration. *See* Order, 8/25/21, at 1. This timely Commonwealth appeal followed.[1] Both the Commonwealth and the trial court have complied with the mandates of Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

---

[1] In this Court, Appellee filed a motion to quash the instant appeal. *See* Motion, 12/16/21. Therein, Appellee argued that the trial court's ruling was interlocutory rather than a final order from which the Commonwealth was permitted to appeal. *Id*. This Court denied the motion without prejudice for Appellee to present the argument to the panel assigned to address the merits of the appeal. *See* Order, 2/8/22.

Whether the trial court erred in granting Appellee's motion for a mistrial where the testimony in question was given by Appellee's own witness, Appellee failed to advise the witness of the limitations imposed by the motion *in limine*, the question posed by Appellant sought to elicit admissible evidence regarding the witness'[s] bias, and the answer given by the witness was non-responsive to Appellant's question?

Commonwealth's brief at 4.

Preliminarily, we consider Appellee's argument that this appeal must be quashed. **See** Appellee's brief at 18-28. Appellee contends that the appeal should be quashed because the Commonwealth appealed from an interlocutory order retroactively granting a mistrial. **Id**. We disagree.

It is well settled that "[j]urisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." **Commonwealth v. Seiders**, 11 A.3d 495, 496–97 (Pa.Super. 2010) (citation omitted). Generally, appellate courts have jurisdiction only over final orders. **See** 42 Pa.C.S. § 742. However, the appellate courts have been granted jurisdiction to review interlocutory orders under limited circumstances, including certain interlocutory appeals as of right. **See** Pa.R.A.P. 311.

The Commonwealth filed the instant appeal pursuant to Pa.R.A.P. 311(d), which permits a Commonwealth appeal from an interlocutory order in a criminal action "where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); **see also** Commonwealth's brief at 1. However, our Supreme Court has consistently held that "the application of Rule 311(d) . . . is limited to circumstances in which a pretrial ruling results in the suppression,

- 6 -

preclusion or exclusion of Commonwealth evidence." ***Commonwealth v. Shearer***, 882 A.2d 462, 467 (Pa. 2005); ***see also Commonwealth v. Andre***, 17 A.3d 951, 957 (Pa.Super. 2011) ("Pa.R.A.P. 311(d) has been limited to pre-trial rulings precisely because to hold otherwise would permit the Commonwealth to appeal mid-trial from adverse rulings entered by the trial court that might hamper the prosecution."). The challenged ruling in this case was not a pre-trial determination. Instead, by the time the court issued its ruling, jeopardy had long since attached, evidence had been presented, and the jury had issued its verdict. ***See Commonwealth v. Hallman***, 67 A.3d 1256, 1261 (Pa.Super. 2013) ("In a criminal jury trial, jeopardy attaches when the jury is sworn."). Thus, the order does not fall within the parameters of Rule 311(d) as delineated by our Supreme Court. However, this does not end our jurisdictional inquiry.

The Commonwealth's issue pertains to whether the trial court committed an error of law in awarding a new trial. ***See*** Commonwealth's brief at 4 ("whether the trial court **erred** . . ." (emphasis added)). Pennsylvania Rule of Appellate Procedure 311(a)(6) confers this Court with jurisdiction in those circumstances. ***See*** Order, 8/4/21 (granting Appellee's motion for arrest of judgment and **vacating** the sexual assault verdict); ***see also Commonwealth v. Coleman***, 532 A.2d 477, 482 (Pa.Super. 1987) ("[f]or one hundred and seventy-five (175) years appellate courts of this Commonwealth have properly entertained appeals by the Commonwealth from orders granting a defendant arrest of judgment."). Rule 311(a)(6) states

that in a criminal proceeding, the Commonwealth may appeal from the decision to grant a new trial when "the Commonwealth claims that the lower court committed an error of law." Pa.R.A.P. 311(a)(6). While we are cognizant that the Commonwealth neglected to invoke this rule, the issue is jurisdictional, and we may raise it *sua sponte*. **See Andre**, **supra** at 957 (finding jurisdiction over an appeal pursuant to Rule 311(a)(6) after the Commonwealth erroneously appealed pursuant to Rule 311(d)).

Furthermore, we are unpersuaded by Appellee's argument that Rule 311(a)(6) does not apply because the court retroactively granted a mistrial, and the declaration of a mistrial is not appealable by the Commonwealth. **See** Appellee's brief at 28. It is well-established that Rule 311(a)(6) does not apply when a trial court declares a mistrial, because no party has been "awarded" a new trial. **Commonwealth v. Wardlaw**, 249 A.3d 937, 951-53 (Pa. 2021) (differentiating between an order granting a motion for a new trial which was appealable as of right pursuant to Rule 311(a)(6) and a mistrial which was not). However, the court did not grant a mistrial here. **See** Pa.R.Crim.P. 605(B) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reason of manifest necessity."). Instead, the trial court granted a post-trial motion for arrest of judgment and vacated the sexual assault verdict. Thus, case law governing interlocutory appeals from mistrial

awards is irrelevant. The ruling was immediately appealable as of right under Rule 311(a)(6).

Having decided that jurisdiction is proper, we turn now to the merits of whether the trial court erred when it changed its mind post-verdict on whether a mistrial was necessitated and granted Appellee's motion in arrest of judgment. *See* Commonwealth's brief at 28. We review the decision to grant a new trial for an abuse of discretion or an error of law. *See Rohe V. Vinson*, 158 A.3d 88, 95 (Pa.Super. 2016). "An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Kriner*, 915 A.2d 653, 656 (Pa.Super. 2007) (internal quotations and citations omitted).

The Rules of Criminal Procedure provide that "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B)(1). The Comment to Rule 704(B) limits the grounds on which a trial court judge can grant a motion for extraordinary relief to those "errors so manifest that immediate relief is essential." Pa.R.Crim.P. 704, Comment; *see also Commonwealth v. Grohowski*, 980 A.2d 113, 115 (Pa.Super. 2009).

Herein, the trial court initially denied Appellee's motion for a mistrial, finding that the offending comment was unintentionally elicited, and any

prejudice suffered was remedied by its curative instruction. *See* N.T. Jury Trial, 6/24/21, at 206-07. After the jury rendered its verdict, the court found it was compelled to reverse course on its prior finding due to the close jury verdict and its own interpretation of *Commonwealth v. Padilla*, 923 A.2d 1189, 1193-94 (Pa.Super. 2007), which the court found required the award of a new trial because the Commonwealth violated the motion *in limine* order. *See* Trial Court Opinion, at, 12/8/21, at 5.

The Commonwealth contends that this decision was the result of two errors. First, it asserts that the trial court improperly abandoned its initial factual determination at trial based upon a split jury verdict. *See* Commonwealth's brief at 30-31. Further, it argues that the trial court's decision is founded upon an incorrect application of the *Padilla* decision, which the court interpreted as mandating a new trial any time a motion *in limine* is violated. *Id*. at 28-31.

Initially, we note that the only piece of evidence that the court relied upon when reversing itself that it did not have access to when making its initial ruling was the fact that the jury convicted Appellee on one count and hung on the other. *See* Trial Court Opinion, 10/19/18, at 8. In fact, in its opinion, the court explained that its decision to reverse itself was heavily influenced by the jury's mixed verdict. *Id*. In the trial court's view, this verdict demonstrated how "close" the case was, which therefore meant that the violation of the motion *in limine* was more impactful than the court initially held. *Id*. The

Commonwealth contends that this reasoning constituted an error of law, and we agree.

The importance the trial court placed on the meaning behind the jury verdict contradicts longstanding federal and state precedent cautioning against speculating about the reasons behind an inconsistent verdict. *See*, *e.g.*, *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012) ("While recognizing that the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision."); *see also United States v. Powell*, 469 U.S. 57, 66 (1984) ("[A]n individualized assessment of the reason for the inconsistency [in a split verdict] would be based . . . on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."). Accordingly, to the extent the trial court granted a new trial on the grounds that the jury issued a split verdict, it erred.

We also agree with the Commonwealth that the trial court misapplied the holding of *Padilla* as mandating the issuance of a new trial when the Commonwealth violates a motion *in limine*. *See* Trial Court Opinion, 10/19/21, at 4-6. In that case, Padilla filed a motion *in limine* seeking "to preclude evidence of his prior incarceration and parole status, the issuance of a [Protection From Abuse] order against him, and his use of marijuana," which the trial court granted. *Id*. at 1192. Nevertheless, a police officer testified "in response to an open-ended question [on direct examination] about what he found when he arrived at the scene[,]" as follows:

- 11 -

When I got there I found – I was met at the door by the mother who was very upset, yelling and carrying on, practically mad at me, but she started to tell me how everybody was downstairs. She went and picked up this guy [Padilla]. He's a family friend. **Apparently he just got out of jail**, and so she was doing him a favor.

*Id*. Defense counsel immediately requested a sidebar, which was conducted within earshot of the jury, and moved for a mistrial. *Id*. During the sidebar, the trial court initially stated its intention to grant the mistrial before the Commonwealth persuaded the court that a curative instruction would be sufficient. *Id*. at 1192-93. The court concluded the sidebar by denying the motion for mistrial and issuing a curative instruction directing the jurors to disregard the remarks made by the witness. *Id*. at 1192-93. Afterwards, the Commonwealth resumed its direct examination by repeating the officer's testimony that "Mom was upset." *Id*. at 1196. Appellant was convicted and appealed the denial of his request for a mistrial.

On appeal, we reversed, determining that the officer's statement was clearly prejudicial because the trial court had entered an "explicit order that no reference whatsoever must be made to [Padilla's] time in jail" and the witness clearly communicated to the jury that Padilla had been previously incarcerated. *Id*. at 1193. However, the *Padilla* Court's prejudice analysis was not limited to the fact that the pretrial ruling had precluded the at-issue testimony. *Id*. at 1196. The Court also considered that the jury had overheard the side bar conference addressing the matter, the inadequacy of the curative instruction issued, and the problematic subsequent questioning by the prosecutor. Ultimately, the court found the instruction was too vague

to remedy the infraction. *Id*. Accordingly, a proper application of *Padilla* should view the violation of a pretrial order prohibiting a prejudicial remark as an important factor in our analysis, but not as an automatic determination that the error was prejudicial and a new trial must be ordered.

For example, in *Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa.Super. 2008), the trial court granted a defense motion *in limine* seeking the preclusion of any evidence of Hudson's prior convictions. Nevertheless, at trial, a witness testified that Hudson "had to go see his parole officer or probation officer." *Id*. Following an objection, the trial court immediately issued a curative instruction. On appeal, this Court held as follows:

> Based upon this record, we conclude that [the] testimony regarding Hudson's probation or parole officer was inadvertent, even when viewed in light of Hudson's motion *in limine*. The prosecutor did not ask a question that could have been reasonably foreseen to elicit evidence of Hudson's prior criminal activities. Furthermore, [the] testimony constituted a mere passing reference to Hudson's prior criminal activity that the trial court's cautionary instruction adequately cured. Judge Johnson not only clearly instructed the jury to disregard the testimony when deliberating on the verdict, he also expressly instructed them that they had no basis upon which to determine whether the testimony itself was true. When viewed in light of the substantial circumstantial evidence presented by the Commonwealth at trial indicating Hudson's guilt, we conclude that Hudson did not suffer improper prejudice from this reference to his prior criminal activity.

*Id*. at 1035.

We find that the case *sub judice* is distinguishable from *Padilla* on the facts, and more in line with our decision in *Hudson*. As in *Padilla*, the pretrial motion in this case did constitute an absolute ban on prior-bad-acts evidence,

- 13 -

such that the violation of this order prejudiced Appellant. ***See Padilla***, ***supra*** at 1193. However, such a finding does not conclude our analysis. ***Id***. at 1196. Unlike in ***Padilla***, this was a passing reference that was immediately interrupted by the following, detailed cautionary instruction:

> We'll just stop this here. All right. I'm not sure what the purpose of asking whether he's paying rent currently because it doesn't go to reputation.
>
> Sometimes people charged with serious offenses spend some time incarcerated. Whether someone is incarcerated or not has nothing to do with whether they're innocent or guilty of an offense.
>
> So I'm instructing the jurors as a matter of law that any reference to incarceration should be not taken adversely if, indeed, he is or he isn't. Very well.

N.T. Jury Trial, 6/24-25/21, at 199. This instruction was clear, specific, properly instructed the jury to disregard the improper evidence, and reminded the jury that the statement may or may not be true. ***See also Commonwealth v. Thompson***, 106 A.3d 742, 753 (Pa.Super. 2014) (finding that if evidence is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction so long as the court's instruction is clear and specific).

Importantly, here, as in ***Hudson***, there was no deliberate attempt by the prosecutor to elicit the at-issue remark. Indeed, Appellee does not claim that the remark was intentionally elicited and the trial court has consistently deemed the interaction unintentional. N.T. Jury Trial, 6/24-25/21, at 206; ***see also*** Trial Court Opinion, 10/19/21, at 10-11. Moreover, in contrast to

***Padilla***, Appellee waited to object until after the jury left the room, there was no side bar where the jury overheard the trial court vacillate between granting and denying the motion for a mistrial, and the Commonwealth did not revisit the inadmissible statement when it resumed its questioning or at any other point in the presence of the jury. N.T. Jury Trial, 6/24-25/21, at 199. Thus, there was no additional, related prejudice to Appellee caused by the Commonwealth or the trial court that the instruction needed to remedy. Instead, the only additional reference to Appellee's incarceration status came from defense counsel during closing argument:

> And you can't take concepts from outside this courtroom and apply them, prejudices that you might walk in here with and apply them to this case. You have to take it from the real evidence that came in in this case, because **despite it coming out yesterday that [Appellee] may or may not have been incarcerated**, that's nothing for you to consider. He's innocent. That's nothing for you to consider. The Court will tell you that. Because he didn't take the stand, that's nothing for you to consider against him. That's a tactical decision and a right he has that you all have as well. And unless and until they meet their burden without that information and you all agree with that, he remains innocent and he is not guilty.
>
> And also proper evidence that came out that you can consider is his character evidence that we put on the stand. Despite that woman being attacked because she could barely understand these complicated rules, what did we get out of Ms. Bruno? He is a nonviolent, peaceful person. She's known him for four years. She allows him to live in one of her rental properties. She's his landlord. That's their relationship.
>
> Nothing was discredited about his reputation, just about some complication where she could barely understand the question, but his character was not challenged in those questions.

*Id*. at 212-13 (emphasis added). Notably, the impact of this reference by defense counsel is not discussed in the trial court's opinion, despite the implication that defense counsel did not believe revisiting the information would be harmful to Appellee.

Finally, the evidence presented by the Commonwealth in this case was substantial. In addition to the victim's compelling testimony about the assault, the sexual assault nurse examiner identified photographs that corroborated the victim's description of events and testified that the victim suffered blunt force trauma to her cervix. *Id*. at 134-36. Furthermore, Appellee's DNA was found inside the victim's vagina and Appellee initially denied even meeting the victim. *Id*. at 137-38, 165-66.

For these reasons we conclude that the landlord's unsolicited passing reference to Appellee's incarceration status did not raise to the level of an "error so manifest that immediate relief [was] essential." Pa.R.Crim.P. 704(B)(1). We find that the trial court erred when it abandoned the factual determinations it had previously made, placing improper weight on the jury's verdict. We also find that the court erred when it incorrectly interpreted *Padilla* as mandating a new trial in this circumstance. Accordingly, we reverse the trial court's order granting Appellee's post-verdict motion for a new trial, and remand for the reinstatement of the sexual assault verdict and sentencing.

Order reversed.  Case remanded for reinstatement of guilty judgment and sentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022